IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GEORGE J. SANDERS , JR. ) | |
| AIS # 263280, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:19-CV-793-WKW |
| ) | |
| JOSEPH H. HEADLEY, WARDEN III, ) | |
| ECF, et al., ) | |
| ) | |
| Defendants. ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  DISCUSSION

The Plaintiff filed this action on October 17, 2019 alleging that on September 13, 2017, the Defendants violated his Eighth Amendment rights when certain of them used excessive force against him and denied him adequate healthcare while he was housed at Staton Correctional Facility.  (Doc. 1 at pp. 2-3).  The sole issue addressed by this Recommendation is whether Plaintiff's Complaint (Doc. 1) is barred by the two-year statute of limitations[1] because the prison mailbox rule mandates that the September 13,

---

[1] The applicable law provides that

> [a]ll constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought.  *Wilson v. Garcia*, 471 U.S. 261, 275-76, 105 S.Ct. 1938, 1946-47, 85 L.Ed.2d 254 (1985).  [The plaintiff's] claim was brought in Alabama where the governing limitations period is two years.  Ala. Code § 6-2-38; *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) (en banc).  Therefore, in order to have his claim heard, [the plaintiff is] required to bring it within two years from the date the limitations period began to run.

2019 delivery date (alleged by the Plaintiff) is the date that must be used for the limitations period calculation in this case. *See Garvey v. Vaughn,* 993 F. 2d 776, 783 (11th Cir. 1993) (In §1983 cases, "the date of filing shall be that of delivery to prison officials of a complaint or other papers destined for the district court for the purpose of ascertaining timeliness."). In *Garvey*, the court determined that because the prison authorities have the ability to establish the correct date of delivery through their logs, they bear the "burden of proof for the pro se prisoner's date of delivering his document to be filed in court." *Id.* at 781. The court said that "[t]he teaching of *Houston* [*v. Lack*, 487 U.S. 266 (1988)] is that prison delay beyond the litigant's control cannot be fairly used in computing the time for appeal." *Id.* at 783.

Indeed, *Houston* establishes a bright line rule that at the moment prison authorities received his Complaint, that Complaint must be considered filed. *See Natson v. U.S.*, 494 Fed.Appx. 3, 6, 2012 WL 3793000, at *2 (11th Cir. 2012)(stating this rule in the §2255 context). It is also clear that, "[u]nless there is evidence to the contrary, like prison logs or other records, [the court must] assume that a prisoner's motion was delivered to prison authorities on the day he signed it." *U.S. v. Glover*, 686 F.3d 1203, 1205 (11th Cir. 2012); *see also Washington v. United States,* 243 F.3d 1299, 1301 (11th Cir. 2001). The government has the burden to prove that the date on which a petition—or, in this case, a Complaint—was delivered was a date other than the date claimed by the inmate. *See, e.g., Natson*, 494 Fed.Appx. 3, 5, 2012 WL 3793000, at *1.

---

*McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008).

2

Pursuant to Orders of this Court, the Defendants filed an Answer and Special Report, as supplemented. (Docs. 14, 18, 23 and 33). After reviewing the special reports and exhibits, the court issued Orders requiring the Plaintiff to file a response to the Defendants' special report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. (Doc. 25 and 35). This Order specifically cautioned that "**unless within ten (10) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 25 at p. 2). The Plaintiff filed responses to this Order. (Docs. 41 and 42). Pursuant to the directives of the order entered on April 27, 2020, the court now treats the Defendants' special reports as a motion for summary judgment and concludes that judgment is due to be granted in favor of the Defendants.

In their special report, the Defendants have raised the defense that the amended complaint is barred by the statute of limitations. (Doc. 14). The Plaintiff has responded. (Doc. 41 and 42). The Court will now turn its attention to the question of whether the statute of limitations for this 1983 action bars its consideration of the merits of the Plaintiff's claims as stated in the Complaint.

In their Special Report, the government has represented through the Affidavit of Staton Correctional Facility Warden III, Joseph H. Headley that there is no log for recording the date mail is received from an inmate. (Doc. 18-1 at p. 1). Specifically, Defendant Warden Headley testified as follows:

> There is no current policy that requires documenting on a log the receipt of mail from an inmate to be sent from this facility. Consequently there is no log of when mail is received from the inmate to the facility mailroom. Mail is delivered daily to the United States Postal Service from Staton Correctional Facility. Mailroom staff select mail delivered to the mailroom from inmates for inspection on a random basis. It would be unusual for mail addressed to the Court to be selected for inspection. Inspection of mail is routinely completed within twenty-four hours and sent to the Postal Service if it does not violate DOC policies. Court filings by inmates do not violate DOC policies.
> For the document in question, if Inmate Sanders delivered it to the facility mailroom and it was selected for inspection, it would be delivered to the Postal Service at the latest, twenty-four hours after delivery. Under no circumstances would mail be held up for thirty-four days before delivery to the Postal Service.

(Doc. 18-1 at pp. 1-2). Ordinarily, it would seem that this scant evidence is insufficient to meet the government's burden that the Complaint was delivered on a date other than September 13, 2017, as alleged by Plaintiff.. Thus, the Court would simply take the Plaintiff at his word concerning the date on which he provided the Complaint in question to prison officials for mailing. *See, Garvey,* 993 F. 2d at 781.

However, as the Eleventh Circuit has clearly said, an inquiry about the specific date of delivery to prison officials is a question of fact, and the assumption of delivery on the day the inmate says he signed it applies *"[u]nless there is evidence to the contrary*, like prison logs or *other records."* *Natson*, 494 Fed.Appx. 3, 5, 2012 WL 3793000, at *1 (first emphasis supplied, second emphasis in original); *see also Glover*, 686 F.3d at 1205 (same). The *Natson* court declined to read *Houston* to hold "that factual representations, about

4

timing, by convicted felons must be accepted—as a matter of law—as accurate" unless a specific type of evidence (a "contemporaneous mail-received-from-prisoner log") is produced, and emphasized that other evidence may be competent to establish untimely filing. *Natson*, 494 Fed.Appx. 3, 5, 2012 WL 3793000, at *1; *see also Allen v. Culliver*, 471 F.3d 1196, 1198 (11th Cir. 2006)(District court may inquire as to the actual facts concerning whether or not, and when, a document was delivered to the prison authorities, and "may take into account any and all relevant circumstances… ."). In the instant case, the Court is confronted with such other evidence on the face of its own record, which clearly contradicts the Plaintiff's representations and which it cannot ignore. This evidence takes two forms.

First, the Plaintiff's own documents filed with this Court fail to support Plaintiff's claim that the Complaint was executed on September 13, 2019 and delivered to the prison mailing room as Plaintiff claims.  While the Plaintiff's Complaint filed with the Court contains both Plaintiff's signature and a handwritten September 13, 2019 execution date, *that date appearing on the "Executed on" line cleary follows another date which has been scratched out.*  Based upon the Court's close inspection of the document, it appears that the *scratched out date could be October 13, 2019*.  (Doc. 1 at p. 4).  Additionally, the envelope containing the Complaint is clearly post-marked "Oct 16, 2019".  (Doc. 1 at p. 5).  Asking the Court to accept this suspect September 13, 2019, execution and delivery date solely on the basis of Plaintiff's representation strains credulity, based on the face of

5

Plaintiff's own documents. (Doc. 1 at p. 4). Also, particularly persuasive is the second relevant form of evidence appearing on the court's own record: the mailing history.

Other than the Complaint and Application for IFP[2], which were both filed with the Court October 17, 2019, Plaintiff filed nine additional documents with the Court while he was housed at Staton.[3] The longest delay of any other documents executed by Plaintiff and filed with the Court was 10 days.[4] (*See* Doc. 51 which was dated by Plaintiff on June 14, 2021, postmarked on June 22, 2021 and filed with the Court June 24, 2021). Indeed, the Court's docket demonstrates that with respect to the Plaintiff's other eight filings prior to his transfer from Kilby, the time between purported execution and filing ranged from 2 days to 7 days.[5] No other filings by Plaintiff come close to the 34 day delay demonstrated by the purported execution date of the Complaint – September 13, 2019, (Doc. 1 at p. 4).

---

[2] The Court can not ignore the dates contained in the IFP Application, which was also filed with the Court on October 17, 2019. (Doc. 2). The Plaintiff signed and dated this application on September 9, 2019 (Doc. 2 at p. 2), and the prison account statement from Staton, which includes Plaintiff's account information beginning August 31, 2019, going backward twelve months, includes a typed notation at the bottom stating "Run date: 9/13/2019 4:44:51 PM". (Doc. 2 at p.3). While this evidence undisputedly demonstrates that Plaintiff was working on filing a complaint in September, 2019, there is no evidence that this IFP was generated for the purpose of filing the instant complaint. More importantly, even were Plaintiff working on the instant complaint in September, the relevant inquiry for the purpose of mailing and the statute of limitation is the date of "delivery" to prison guards for mailing. As to that important date, the IFP application date information is inconclusive.

[3] On December 17, 2021, the Plaintiff advised the Court of his transfer to Ventress Correctional facility. (Doc. 57).

[4] The Court consistently computes these delay times based on the court docket because in some instances the postmark is illegible.

[5] *See* Doc 29, executed by Plaintiff on May 13, 2020, postmark illegible, filed in this Court on May 18, 2020 (delay of 5 days); *See* Docs. 36 and 37, both executed by Plaintiff on June 8, 2020, postmark illegible, filed in this Court on June 15, 2020 (delay of 7 days); *See* Doc. 38, executed on June 16, 2020, postmarked June 17, 2020 and filed June 18, 2020 (delay of 2 days); *See* Docs. 41 and 42, executed July 1, 2020, postmark illegible, filed July 6, 2020 (delay of 5 days); *See* Doc. 43, executed July 28, 2020, postmarked July 29, 2020, filed July 30, 2020 (delay of 2 days).

Rather, the undisputed postmark date -- October 16, 2019, (Doc. 1 at p. 5) and the equally undisputed filing date -- October 17, 2019 support the conclusion that the September 13, 2019 execution date (Doc. 1 at p. 4) is unreliable.

Importantly, the Plaintiff does point to any evidence or make any argument of undue delay by any prison personnel in processing his complaint for mailing. Rather, in his response to the Defendants' Special Reports, Plaintiff simply claims the "prison mail box rule" counters the Defendants' statute of limitations argument. (Doc. 42 at p. 3). As discussed *supra*., where a delivery date is disputed, the Court is required to look at "other records" for purposes of determining delivery and thus filing pursuant to the prison mail box rule. *Natson*, 494 Fed.Appx. at 5; *see also Allen,* 471 F.3d at 1198. Indeed, before the Court is the Plaintiff's Complaint, with a scratched out date, an undisputed postmark and filing date and the undisputed mailing history of other documents filed by Plaintiff in this action. Also persuasive is Defendant Warden Headley's representations that the general policy and practice of Kilby is to daily send prisoner mail to the post office. (Doc. 18-1 at pp. 1-2). Even when Kilby personnel randomly select mail for inspection, this process is usually completed in 24 hours and the mail is sent to the post office. *Id.*

Thus, the Court concludes that the clear record evidence renders Plaintiff's representations concerning the execution and mailing date of the Complaint unreliable or mendacious. Thus, the court turns to the postmark date of the Complaint to determine the date on which this pleading was delivered for mailing. *See Tuff v. Widener*, 2013 WL 3804579, at *5 (S.D.Ga. 2013) (Using the postmark date of Plaintiff's pleadings to

determine the date these pleadings were delivered to prison officials for mailing when the mailing date was disputed.). That date—October 16, 2019— falls clearly outside the two-year statute of limitations applicable to the filing of the instant action. Accordingly, the Court concludes that the Plaintiff's Complaint (Doc. 1) is barred by the statute of limitations and this action is due to be dismissed.

## II. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The Defendants' motions for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the Defendants.

3. This case be DISMISSED with prejudice.

4. No costs be taxed.

On or before **December 22, 2022**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-

1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, on this the 7th day of December, 2022.

                                             /s/ Charles S. Coody
                                             CHARLES S. COODY
                                             UNITED STATES MAGISTRATE JUDGE